# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| | § | |
| **LARRY D. FULLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:05-CV-0236-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **MICHAEL J. ASTRUE[1],** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed December 22, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on August 4, 2006. On October 3, 2006, Defendant filed a Motion to Reverse and Remand. Plaintiff filed his response to the motion to Reverse and Remand on October 23, 2006.

Plaintiff contends that the ALJ erred by failing to apply the appropriate legal standard in evaluating whether his impairments met or equaled the criteria of Section 12.05C of the Listing of Impairments. He further contends that the ALJ erred as a matter of law by making an incomplete mental residual functional capacity finding. Pl. Brief at 1.

---

[1]     Michael J. Astrue has been appointed as the new Commissioner of Social Security, replacing Jo Anne B. Barnhart, effective February 12, 2007, per FED. R. CIV. P. 25(d)(1).

Defendant filed a motion to remand and a supporting brief wherein she asked that this matter be reversed and remanded for further proceedings under the fourth sentence of 42 U.S.C. § 405(g) to permit the ALJ to consider the severity of Plaintiff's impairments, singly and in combination, and to fully consider the proper criteria in determining whether his impairments meet the severity requirements of Section 12.05C of the Listing of Impairments. Defendant proposes that the ALJ should acquire Plaintiff's school records, if available, to help determine his mental and functional capacities prior to age 22 and to obtain another psychological evaluation as well as testimony from a medical expert specializing in psychology, to ascertain the nature and severity of Plaintiff's mental impairment and to resolve any inconsistencies in the evidence of record. Def. Brief at 1-2.

Plaintiff does not oppose a remand to allow the ALJ to "fully consider the proper criteria in determining whether Fuller's impairments meet the severity of Listing 12.05C" at step 3 of the sequential evaluation process. However, Plaintiff argues that upon remand, the ALJ should not consider the severity of his back impairment and that a new psychological evaluation should not be obtained. He argues that the court is without jurisdiction to enter an order with detailed instructions to revisit any findings "that have not been shown to be unsupported by substantial evidence or to have been reached without applying the appropriate legal standards." Pl. Response at 5.

Having carefully considered Plaintiff's brief, Defendant's motion and brief, and Plaintiff's response, this court finds that the motion to remand should be granted as set forth herein.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits on December 23, 2003, with a protective filing date of December 5, 2003, alleging disability beginning July 1, 2003. Tr. 13, 60-61. Plaintiff's application was denied initially and upon reconsideration. Tr. 13, 21-26, 29-32. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 20, 2004, and this matter came for hearing before the Administrative Law Judge ("ALJ") on June 23, 2005. Tr. 13,

33-34, 179-201.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 182-97.

Carol Bennett, a vocational expert ("VE"), appeared and testified as well.  Tr. 197-99.  The ALJ

issued a decision unfavorable to Plaintiff on July 29, 2005.  Tr. 10-18.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a

disability within the meaning of the Social Security Act as of December 5, 2003.  He found that:

Plaintiff had not engaged in substantial gainful activity at any time since December 5, 2003.  Tr. 14.

Plaintiff has "severe" impairments, including back problems, borderline intellectual functioning,

alcohol abuse (in remission), and seizure disorder (by history).  *Id.*  Plaintiff's severe impairments,

singularly or in combination, were not severe enough to meet or equal in severity any impairment

listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ

was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to

perform his past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning

his impairments and their impact on his ability to work were not entirely credible.  Tr. 16.

The  ALJ noted that Plaintiff has no past relevant work.  Tr. 17.  He noted that Plaintiff was

considered a "younger individual" with a limited formal education.  20 C.F.R. §§ 416.963, 416.964;

*Id.*

The ALJ found that Plaintiff retained the RFC to perform sedentary work activity, limited

to jobs that do not require more than occasional stooping, crouching, crawling, kneeling, or climbing

stairs and ramps; that do not require climbing scaffolds, ladders, and ropes; that do not require

working at unguarded heights or near unguarded hazardous mechanical equipment; that do not

require sitting without the opportunity to occasionally stand in addition to a lunch and the normal

legal breaks during the work day; that do not require understanding, remembering, and carrying out

more than simple instructions; and that do not require reading, working with money, or doing math

problems.  Tr. 14-15.  Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments.  Tr. 18.  He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of assembler, with at least 105,000 jobs nationally; and production inspector, with at least 25,000 jobs nationally. *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  *Id*.

Plaintiff submitted a Request for Review of Hearing Decision/Order on August 29, 2005.  Tr. 7-9.  The Appeals Council issued its opinion on October 18, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr.4-6.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 22, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court

will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 18.

## III.   DISCUSSION

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000). A second issue to determine is the proper remedy when the ALJ's decision is not supported by substantial evidence – a remand for the entire ALJ decision, and for further development of the administrative record as described by Defendant, or a remand limited to certain portions of the ALJ's decision without further development of the administrative record, as asserted by the Plaintiff. Plaintiff sets forth numerous claims of error. Defendant agrees that the ALJ's findings were flawed, in part, because of the alleged errors set forth by Plaintiff. For the purpose

of the motion to remand, the court accepts that the ALJ's findings were flawed. Therefore, the court must determine the appropriate remedy.

The parties agree that remand is appropriate to permit the ALJ to further consider the severity of Plaintiff's mental impairment under Section 12.05C of the Listing of Impairments.

Section 12.05 of the Listing of Impairments, dealing with mental retardation, defines this impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. This section indicates that presumptive disability under the Listing of Impairments is established "when the requirements in A, B, C, or D are satisfied." *Id.* The criteria of Section 12.05C include a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. "A claimant must prove both of these conditions in order to meet his burden under step three." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 110 S. Ct. 885, 891-92 (1990)). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Id.* (citing 20 C.F.R. § 404.1526(a)).

Plaintiff claims that he has met the requirements of Section 12.05C of the Listing of Impairments, having shown a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. Plaintiff notes that the ALJ found that intelligence testing revealed a verbal IQ of 66, a performance IQ of 74, and a full scale IQ of 66. Tr. 16. Plaintiff argues that while remand for consideration of this information is appropriate, the ALJ should not be permitted, upon remand, to consider all of his impairments, noting that the ALJ's

finding at step 4 that his back impairment permits him to perform a limited range of work at the sedentary exertional level.  Plaintiff also takes issue with the Defendant's request that upon remand, the ALJ further develop the record by obtaining an additional psychological evaluation and expert psychological testimony to "ascertain the nature and severity of Fuller's mental impairment and to resolve any inconsistencies in the evidence of record."  Def. Brief at 2.  Plaintiff argues that because of the results of the IQ testing and the presumption that a person's IQ remains stable over time, further development as to deficits in adaptive functioning during the developmental period is not necessary and there is no indication that Dr. Stephen M. Osborn's IQ testing results are inconsistent with other evidence in the record.

First, the court notes that under 20 C.F.R. § 404.1523, in determining whether the claimant's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility for benefits under the law, the ALJ is required to "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  *See* 20 C.F.R. § 404.1523.  Moreover, once the ALJ finds a medically severe combination of impairments, the ALJ is further instructed to consider "the combined impact of the impairments" throughout the disability determination process.  *Id*.  While Plaintiff argues that there is no basis for considering all of his impairments upon remand, the ALJ is required to consider all of his impairments together.

Section 12.00(A) describes the structure for evaluation of mental impairments under § 12.05 of the Listing Impairments:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A).  Section 12.05 clearly provides that in order to meet the Listing criteria for mental retardation, a claimant's mental impairment must first satisfy the diagnostic criteria – that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.

Plaintiff claims that the required criteria for 12.05C are met because his IQ scores establish that he had "significantly subaverage general intellectual functioning before age 22."  Pl. Brief at 8.  Plaintiff agrees that mental deficits must manifest prior to age 22.  He notes that he was not in the developmental period, or younger than 22, when the IQ tests were administrated.  However, Plaintiff notes that the Commissioner's policies recognize that IQ scores are generally stabilized by age 6 and points to authority from other circuits indicating that a person's IQ is presumed to remain stable over time, absent any evidence of a change in an individual's intellectual functioning.  Plaintiff argues that since there is no evidence in the present case that his intellectual functioning has changed since age 16, his IQ scores alone are sufficient to demonstrate that he had the subaverage general intellectual functioning and deficits in adaptive functioning during the developmental period described in the introductory paragraph to 12.05C.

Mental retardation is defined under the regulations as "a lifelong condition."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(B)(4).  Plaintiff points to *Hodges v. Barnhart*, in which the Eleventh Circuit noted that absent evidence of a change in intellectual functioning, a person's IQ is presumed to remain stable over time.  *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001); *see also Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (in which the Eighth Circuit noted that absent evidence of a change in intellectual functioning, a person's IQ is presumed to remain stable over time).  However, the presumption that Plaintiff's IQ has remained stable is insufficient to

demonstrate that Plaintiff has met the criteria of Listing 12.05.  Intelligence tests play an important role in verifying mental retardation but are not the sole measure.

The Commissioner's *Programs Operations Manual System ("POMS"),*[2] describes the relationship of adaptive behavior to IQ scores.  *See POMS* § DI 24515.056(D)(2).  This section notes:

> The term "adaptive behavior" refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age.  Indicators of adaptive behavior include childhood development milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements.  The judgment of an MC [medical consultant] is necessary to affirm that adaptive behavior is consistent with IQ test results.

*POMS* § DI 24515.056(D)(2).

Section 12.00(D)(6) further describes the role that intelligence tests play in evaluating mental retardation for a determination of presumptive disability, noting that "[t]he results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(a).  Thus, Plaintiff's IQ scores alone do not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment."  *See* 20 C.F.R. Part 404, Subpt. P, App. 1,

---

[2]      The POMS may be found at the Social Security Administration Policy Information Site, located at : http://policy.ssa.gov/poms.nsf/partlist!OpenView.

§ 12.00(D)(6). The Eighth Circuit found, for example, that an ALJ may reject IQ scores that are based on a one-time examination by a non-treating psychologist. *See Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1998) ( finding that the ALJ properly rejected IQ scores that were the product of one meeting with a non-treating psychologist and were inconsistent with claimant's daily activities, and no medical records indicated that she was mentally retarded prior to age 22); *see also, Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

In his Motion to Remand and Brief, the Defendant suggests that upon remand the ALJ acquire Plaintiff's school records, if available, "to help determine his mental and functional capacities prior to age 22." Def. Brief at 1. Given the lack of evidence in the record as to Plaintiff's intellectual functioning during this period, it is proper for the ALJ to obtain such records to evaluate whether Plaintiff's impairments meet the criteria of Section 12.05C of the Listing of Impairments. The DSM-IV highlights the importance of deficits in adaptive functioning, noting that "[i]mpairments in adaptive functioning, rather than low IQ, are usually presenting symptoms in individuals with Mental Retardation."[3] The DSM-IV also indicates that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."[4]

While Plaintiff argues that additional development of the record through another psychological evaluation and testimony from an ME to assist in determining the nature and severity of his mental impairment and to resolve any inconsistencies in the record is not necessary, the court finds that such development of the record is appropriate. Dr. Osborn's evaluation indicates that his

---

[3]     *Id*. at 42.

[4]     *Id.*

diagnosis of mild mental retardation on Axis II[5] is provisional and also indicates that "functional intelligence likely placing the patient in the borderline range of intelligence." Tr. 147. The DSM-IV notes that "[t]he specifier *provisional* can be used where there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis."[6] Given the lack of information as to the mental and intellectual functioning of the Plaintiff during the developmental period, the provisional diagnosis by Dr. Osborn, and the notation that functional intelligence may place Plaintiff in the borderline intellectual range of intelligence, additional development of the record, including an additional psychological evaluation and testimony by an ME, is appropriate to determine whether Plaintiff has met the criteria of Section 12.05C of the Listing of Impairments at step 3 of the sequential evaluation process and to determine the specific limitations imposed by his impairments should the process proceed past step 3 upon remand.

Moreover, an ME will be helpful in evaluating the consistency of IQ scores and adaptive behavior. The ALJ may properly consider the opinions of such consultants with the claimant's activities and work history. *Compare POMS*, § DI 24515.056(D)(2) with *Higgins v. Barnhart*, 288 F.Supp.2d 811, 819 (S.D. Tex. 2002) (citing *Villa v. Sullivan*, 895 F.23 1019, 1024 (5th Cir. 1990)) (finding that the claimant's ability to work as a housekeeper, despite her mental limitations, constituted additional *indicia* militating against a finding that her adaptive functioning was deficient to a degree that would be reasonably considered disabling). The *POMS* provides that "Listing

---

[5]      The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorders; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27. An Axis I diagnosis is used to report all clinical diagnoses except for personality disorders and mental retardation, which are reported on Axis II. *Id*. at 27-28.

[6]      *Id*. at 4.

12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required." *POMS* § DI 24515.056(D)(1)(c). In any case, § 12.00(D)(6) indicates that the ALJ should consider the narrative report that accompanies the test results, which should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6). Additional development of the record to determine the consistency of the evidence is thus clearly appropriate.

The parties agree that the ALJ's findings are erroneous, at least in part. The court therefore turns to the question of the proper remedy – a limited remand of only the step 3 and step 5 findings[7] that Plaintiff's mental impairment does not meet the criteria of Section 12.05C of the Listing of Impairments and the determination that Plaintiff could perform other work which exists in the national economy or a remand of the entire matter for further administrative proceedings to consider the severity of Plaintiff's impairments, singularly and in combination, to fully consider whether such impairments meet the criteria of Section 12.05C, and for further development of the record.

Although Plaintiff seeks a piecemeal remand of only those portions of the ALJ decision that he takes issue with, the court finds that it is appropriate to remand this matter for further administrative proceedings, including consideration of the severity and limitations imposed by all of Plaintiff's impairments, further consideration of whether Plaintiff's impairments meet the criteria of Section 12.05C of the Listing of Impairments, and further development of the record, to include a psychological evaluation and expert testimony from an ME specializing in psychology, as well as

---

[7]     Plaintiff specifically asks that the court affirm the ALJ's finding at step 1 that he did not engage in substantial gainful activity between July 2003 and July 2004, and the step 4 finding that Plaintiff's back impairment limited him to a range of work at the sedentary exertional level.

further development of the record as to Plaintiff's mental and intellectual functioning prior to age 22, to include school and any other relevant records which can be obtained. Such development is appropriate given the requirements of Section 12.05C and is necessary given the parties' agreement that the ALJ should again consider whether Plaintiff's impairments have met the criteria of this listing. Moreover, the regulations require that the ALJ consider Plaintiff's impairments both singly and in combination. Therefore, the court finds Plaintiff's argument that it is without jurisdiction to "revisit findings that have not been shown to be unsupported by substantial evidence or to have been reached without applying the appropriate legal standards" is unpersuasive.

Having carefully considered the arguments and submissions of the parties, the evidence of record, and the applicable law, the court finds that Defendant's Motion to Remand should be granted and that the ALJ's decision should be reversed and remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), as set forth herein.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge **GRANT** the Defendant's motion to reverse the ALJ's decision and remand this matter for further administrative proceedings under sentence 4 of 42 U.S.C. § 405(g). Upon remand, the ALJ should further consider whether Plaintiff's impairments, singly and in combination, meet the criteria of Section 12.05C of the Listing of Impairments and should further develop the record, as described above.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must

specifically identify those findings, conclusions, or recommendation to which objections are being

made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's

failure to file such written objections to these proposed findings, conclusions, and recommendation

shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474

U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the

proposed findings, conclusions, and recommendation within 11 days after being served with a copy

shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United

States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.

*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      DATED this 20th day of February, 2007.


**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**